Jerald STURGIS, Petitioner

v.

John/Jane DOE, Secretary, DOC,
et al., Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 7, 2011.
Decided Aug. 4, 2011.

Jerald Sturgis, pro se.

Debra Sue Rand, Assistant Counsel, Camp Hill, for respondents.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.[1]

Jerald Sturgis has filed a petition for review, *pro se*, requesting the Court to issue a writ of mandamus to the Department of Corrections to correct the starting

---

1. The case was reassigned to this author on April 5, 2011.

date of his current prison sentence. In calculating the dates of his incarceration for a 15–to–30 year sentence for third degree murder, the Department used a starting date that followed a five-year term remaining on a 1985 sentence. Sturgis argues that the Department's calculation was illegal because he had no unserved time on the prior sentence. Concluding that the Department's calculations on Sturgis' current sentence were wrong, we grant him judgment.

The facts of this case are not in dispute. They begin with Sturgis' conviction for aggravated assault on December 2, 1985, for which the Court of Common Pleas of Philadelphia County sentenced him to serve six years in prison. As noted in an earlier decision in this proceeding, Sturgis' 1985 sentence was issued under authority of the now repealed Youthful Offenders Act.[2] *See Sturgis v. John/Jane Doe, Secretary, DOC* (Pa.Cmwlth., No. 322 M.D. 2007, filed February 5, 2008) (denying preliminary objections) (*Sturgis I*). Two years later, the trial court revised Sturgis' six-year sentence to a sentence of not less than five years, *i.e.*, a flat five-year sentence. Certified Record, Petition for Writ of Habeas Corpus, Exhibit A.

In 1989, the Department sent a letter to the trial court asking for clarification of its flat five-year sentence order. In that letter, the Department explained that the Sentencing Code, 42 Pa.C.S. § 9756(b),[3] requires a sentence to have both a minimum and maximum term; further, the minimum sentence may not exceed one-half of the maximum sentence. The Department's letter stated that it construed the court's sentencing order to intend a maximum sentence of ten years and concluded by advising that unless otherwise directed by the trial court, Sturgis' sentence would be treated as a five-to-ten-year sentence. The court did not respond to the Department's letter, and the Department calculated the dates of Sturgis' sentence in accordance with its letter.

In 1991, after serving the five-year minimum of his sentence, Sturgis was released on parole. He remained on parole until 1994, when he was charged with third degree murder and aggravated assault. In 1995, he was convicted on these charges and sentenced to serve a 15–to–30 year sentence. In addition, the Parole Board recommitted Sturgis as a convicted parole violator to serve the remainder of his sentence on his 1985 conviction, *i.e.*, five years. Accordingly, Sturgis did not begin serving his sentence on the 1995 conviction until after he served the backtime on the 1985 conviction. Sturgis did not appeal his recommitment as a convicted parole violator or challenge the Department's sentence calculation.

In 2007, Sturgis filed the instant petition for review, in which he asserts that the Department acted illegally in treating his 1985 five-year sentence as a five-to-ten-year sentence. This illegal act delayed the starting date of his 1995 sentence by five years. Sturgis sought to have that time credited toward his 1995 conviction by revising the starting date of his current 15–to–30–year sentence.

After its preliminary objections were overruled in *Sturgis I*, the Department

**2.** Former Act of April 28, 1887, P.L. 63, *as amended*, formerly 61 P.S. §§ 481–486, repealed by Act of December 11, 1986, P.L. 1521, No. 165, § 10.

**3.** It states:

(b) Minimum sentence.—

(1) the court shall impose a minimum sentence of confinement which shall not exceed one-half of the maximum sentence imposed.

42 Pa.C.S. § 9756(b)(1).

filed an answer and new matter. Therein, the Department represented that it had already granted the relief Sturgis sought by giving him a new maximum sentence date of 2023. Because it had already given Sturgis an additional five years credit on his current sentence, the Department asserted the matter was moot. This Court agreed and dismissed Sturgis' petition for review. The Pennsylvania Supreme Court reversed and remanded, holding that "the record does not with certainty establish that the matter is moot...." *Sturgis v. John/Jane Doe, Secretary, DOC*, 600 Pa. 160, 963 A.2d 1291 (2009) (*Sturgis II* ). The matter is now before the Court on remand.

█ After remand, both parties filed motions. Sturgis filed a motion for judgment on the pleadings seeking a new starting date for his current sentence.[4] Sturgis asserts that the Department illegally modified his 1985 sentence by changing it from a five-year sentence to a five-to-ten-year sentence. Sturgis argues that by amending his current 15–to–30–year sentence to make it a 15–to–25–year sentence, the Department committed a second error. In response, the Department filed a cross-application for summary relief, in which it asks the Court to dismiss the petition because there is no further relief this Court can award. The Department argues that Sturgis seeks, illegally, to revise his 1985 sentence from a five-year sentence to a two-and-one-half-to-five-year sentence, which cannot be accomplished by writ of mandamus. The Department points out that Sturgis is asking the Court to nullify

his 1991 parole and rejoins that history cannot be rewritten by writ of mandamus.[5]

█ We begin with a review of mandamus principles. A writ of mandamus is an extraordinary remedy that compels an official's performance of a ministerial act or mandatory duty, as opposed to a discretionary one. *Rosario v. Beard*, 920 A.2d 931, 934 (Pa.Cmwlth.2007). To issue a writ of mandamus the Court must find a clear legal right to relief in the plaintiff; a corresponding duty in the defendant; and a lack of any other appropriate or adequate remedy. *McGill v. Pennsylvania Department of Health, Office of Drug and Alcohol Programs*, 758 A.2d 268, 270 (Pa. Cmwlth.2000).

█ Sturgis contends that the Department lacks authority to change an inmate's sentence, and he is correct in this premise. We have held that

[t]he Department is an administrative agency charged with faithfully carrying-out sentences imposed by the courts, and is without authority "to adjudicate the legality of a sentence or to add or delete sentencing conditions."

*Commonwealth ex rel. Powell v. Department of Corrections*, 14 A.3d 912, 915 (Pa. Cmwlth.2011) (quotation omitted). Where the Department purports to revise a sentence or in some other way makes a mistake in calculating a sentence, mandamus will provide relief. We have explained that because a

sentence imposed by a trial court is a question of law that involves no discretion on the part of the Department, mandamus will lie to compel the Depart-

---

4. "A motion for judgment on the pleadings should be granted only where the pleadings demonstrate that no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law." *Newberry Township v. Stambaugh*, 848 A.2d 173, 175 n. 1 (Pa.Cmwlth.2004).

5. Somewhat sarcastically, the Department wonders about the implications of pretending that Sturgis was not paroled in 1991, suggesting that perhaps it can also be pretended that Sturgis did not commit third degree murder.

ment to properly compute a prisoner's sentence.

*Powell,* 14 A.3d at 915.

Nevertheless, the Department counters that mandamus cannot be used to compel it to honor an illegal sentencing order. In general, a sentence that does not contain a minimum and maximum term, *i.e.,* a flat sentence, is an illegal order. 42 Pa.C.S. § 9756(b)(1). *See also Commonwealth v. Robinson,* 7 A.3d 868, 870 (Pa.Super.2010) (holding that a sentence that violates the Sentencing Code by failing to impose both a minimum and maximum sentence is illegal). Because Sturgis' sentence on the 1985 conviction was a flat sentence, the Department contends that it was an illegal sentencing order.

Sturgis was sentenced under the Youthful Offenders Act, since repealed, to a term of six years; the sentence was then revised to a flat five-year sentence. The Youthful Offenders Act prohibited the imposition of a minimum sentence, and it limited the maximum sentence that could be imposed upon a youthful offender to six years. Section 6 of the former Youthful Offenders Act, 61 P.S. § 485.[6] In *Commonwealth v. Smith,* 375 Pa.Super. 419, 544 A.2d 991, 993, 997–98 (1988), our Superior Court explained that the Youthful Offenders Act prevailed over the conflicting sentencing requirements in the Sentencing Code with respect to youthful offenders. The Youthful Offenders Act did not permit a sentencing court to "fix or limit the duration of sentence," as the trial court did in imposing a flat sentence on Sturgis. *Id.* at 993 n. 4. It appears, therefore, that the trial court issued an illegal sentencing order, albeit not for the reason identified by the Department. The problem with the 1985 sentence was that it contained a minimum sentence at a time when the Youthful Offenders Act forbade minimum sentences.

Having established that Sturgis' 1985 sentence was illegal, the Department asserts it cannot be compelled to carry out an illegal sentence. In support, the Department directs the Court to *Fajohn v. Department of Corrections,* 547 Pa. 649, 692 A.2d 1067 (1997), in which the Supreme Court held that the Department cannot be compelled by a writ of mandamus to enforce an illegal sentencing order. In accordance with *Fajohn,* this Court has repeatedly and consistently held that mandamus is not available to compel the Department to enforce an illegal sentencing order.

In *LeGrande v. Department of Corrections,* 894 A.2d 219 (Pa.Cmwlth.2006), an inmate sought to compel the Department to recalculate his sentence to conform to the trial court's sentencing order. The Department defended by arguing that the sentencing order, which directed the inmate's state sentence to run concurrently with his federal sentence, was illegal. We agreed with the Department's position that "mandamus is not available to compel calculation of an inmate's sentence that was illegal when originally ordered by the trial court." *Id.* at 223. However, we found that the trial court's sentencing order was not illegal and, thus, granted relief to the inmate.

---

**6.** Former Section 6 mandated that the sentencing judge

shall not fix or limit the duration of sentence, but the time which any such person shall serve in said industrial school or on parole shall not in any case exceed six years or the maximum term provided by law for the crime for which the prisoner was convicted and sentenced if such maximum be less than six years. . . .

*Commonwealth ex rel. Feflie v. Attorney General,* 29 Pa.Cmwlth. 473, 371 A.2d 555, 556 (1977) (quoting former Section 6 of the Youthful Offenders Act, 61 P.S. § 485, repealed by the Act of December 11, 1986, P.L. 1521).

Next, in *Lawrence v. Department of Corrections*, 941 A.2d 70 (Pa.Cmwlth.2007), an inmate filed a mandamus action, asserting that the Department disregarded the trial court's sentencing order, thereby depriving him of credit for time served. The Department demurred, asserting that the trial court's sentencing order was illegal because it ordered a state sentence to be served concurrently with backtime previously imposed by the Parole Board. We agreed and dismissed the complaint for the reason that mandamus was not available to compel the performance of an illegal sentencing order.

Most recently, in *Powell*, 14 A.3d 912, an inmate initiated a mandamus action to compel the Department to treat his three criminal sentences as running concurrently, as stated in the trial court's sentencing order. Thirty-six months after entry of the sentencing order, the Department sent a letter to the sentencing court requesting clarification. In response, the trial court amended its sentencing order to have two sentences run consecutively to the third sentence. We held that the trial court's amendment was untimely and illegal; the trial court lacked jurisdiction by the time it ordered the amendment. Concluding that the original sentencing order was not illegal on its face, we granted the inmate relief. Again, however, we reiterated that the Department cannot be compelled by writ of mandamus "to honor an illegal order, which is contrary to *Fajohn*." *Id.* at 918.

Notwithstanding this Court's continued reliance upon *Fajohn*, the concurring opinion argues that *Fajohn* is no longer valid law, citing to *McCray v. Department of Corrections*, 582 Pa. 440, 872 A.2d 1127 (2005), and to *Hunt v. Pennsylvania State Police*, 603 Pa. 156, 983 A.2d 627 (2009). We disagree with the concurring judge's analysis of these cases.

In *McCray*, an inmate sought a writ of mandamus to compel the Department to give him credit for time served. The Supreme Court denied the inmate's request, noting that "[a]s part of the executive branch, the Department lacks the power to adjudicate the legality of a sentence or to add or delete sentencing conditions." *Id.* at 450, 872 A.2d at 1133. From this observation the concurrence infers that the Supreme Court established that the Department has no interest whatsoever in a sentencing order that is illegal. We disagree. *McCray* provides only that the Department lacks the power to "adjudicate the legality of a sentence." *Id.* at 450, 872 A.2d at 1133. *McCray* does not prevent the Department from raising the legality of a sentence in a defense of a mandamus action or prevent this Court from adjudicating that defense. Further, the Supreme Court went out of its way to note that the case did *not* involve an illegal sentencing order, which was the case in *Fajohn*, and it did not overrule *Fajohn*. *McCray*, 582 Pa. at 450, 872 A.2d at 1132.

In *Hunt*, the State Police refused to comply with the trial court's order to expunge Hunt's criminal record, and Hunt responded with a mandamus action. The Supreme Court held that the State Police lacked standing to challenge the legality of an expungement order. This is because the applicable statute, the Criminal History Record Information Act (CHRIA), 18 Pa.C.S. §§ 9101–9183, provided that the State Police were entitled to notice of an expungement only *after* the expungement has been ordered. Here, by contrast, no one challenges the Department's standing to challenge an illegal sentencing order.

In *Hunt*, notably, the State Police raised *Fajohn* as authorizing its refusal to follow a court's expungement order. The Supreme Court responded that *Fajohn* was not applicable because *Fajohn* (1) did not

involve standing but (2) did involve sentencing, which has nothing to do with CHRIA. Stated otherwise, the Supreme Court took pains in *Hunt* to distinguish *Fajohn* and not to overrule it.

In sum, under *Fajohn*, a writ of mandamus cannot be issued to compel the Department to carry out an illegal sentencing order. Our case law has not established that the Department lacks standing to raise the issue of illegal sentencing orders as a defense to a mandamus action. If that were the case, the Department would not be allowed to request clarification from sentencing courts, which it does routinely. Further, the Department is not a bystander to the question of how long it may or must hold an inmate, and a writ of mandamus cannot be issued to compel the Department to enforce an illegal sentencing order. *Fajohn*, 547 Pa. at 651–652, 692 A.2d at 1068. However, that does not end our inquiry.

■ As noted, the Youthful Offenders Act prohibited the imposition of any sentence in excess of six years. Sturgis began serving his sentence in December of 1985. By 1994, when he committed the third degree murder, more than six years had passed since his sentence. Therefore, Sturgis had served the maximum sentence on the 1985 conviction when he was arrested in 1994. This leaves us, then, with the question of whether we can provide relief. The sentence on the 1985 conviction had been served when Sturgis committed the 1994 crime, and, therefore, he was not on parole. The Parole Board lacked authority to "revoke" non-existent parole or to impose backtime on the fully served 1985 sentence.

The Department agrees that Sturgis had no backtime to serve and has given him five years of credit on his current sentence by revising the maximum sentence date. It contends that there is no possible relief

this Court can order. Mandamus cannot unwrite a Parole Board recommital. In *Sturgis II*, our Supreme Court directed this Court to re-examine that point, and we conclude there is relief that can be ordered here.

In *Commonwealth ex rel. Ulmer v. Rundle*, 421 Pa. 40, 218 A.2d 233 (1966), an inmate was sentenced to a term of imprisonment of one-and-a-half to three years. While on parole, he was arrested on new criminal charges and convicted; this resulted in a new sentence of three to six years in prison. The Parole Board recommitted the inmate to serve the balance of his original conviction as a convicted parole violator. After he had served that sentence, the inmate challenged the validity of his first conviction. The Commonwealth responded that the question was moot because the sentence had already been served.

Our Supreme Court concluded that the original conviction was unconstitutional and not moot simply because the sentence had been served. The Supreme Court explained that the unconstitutional conviction and sentence delayed the starting date of the inmate's new criminal sentence. Accordingly, the Supreme Court ordered that all of the time the inmate spent in prison from the date of his commitment on the new criminal charges was to be credited to the new criminal sentence.

Likewise, here, the Department's calculation of Sturgis' 1985 sentence presumed, without authority, that the trial court intended to sentence Sturgis to a 5–to–10–year sentence. The Department's presumption was also erroneous because the maximum sentence that could have been imposed was six years. In short, the starting date of Sturgis' current 15–to–30–year sentence was improperly delayed and, under *Ulmer*, this Court can order that all

time served since Sturgis' 1994 arrest be credited to his current sentence. We disagree that the Department has already done an *Ulmer*-type correction by giving Sturgis a maximum sentence date of 2023, in place of the formerly calculated maximum sentence date of 2028. Rather, we conclude that a change to the starting date is required to remedy the matter.

Sturgis seeks to have his minimum sentence date recalculated from 2013 to 2009. *See* Sturgis' Brief, Inmate Grievance Final Appeal Decision, Exhibit J. The minimum sentence date remains significant because Sturgis is ineligible for parole until his minimum sentence is served. *See* 42 Pa. C.S. § 9756(b)(2) (which generally prohibits parole prior to the expiration of the minimum sentence date absent certain limited exceptions). Thus, a change to Sturgis' minimum sentence date is meaningful relief and that relief has not been satisfied by the Department's recalculation of his maximum sentence date.

For these reasons, Sturgis' motion for judgment on the pleadings is granted and the Department's cross-application for summary relief is denied.

### ORDER

AND NOW, this 4th day of August, 2011, Jerald Sturgis' motion for judgment on the pleadings, dated September 2, 2010, is hereby GRANTED. The cross-application for summary relief filed by the Department of Corrections on November 5, 2010, is hereby DENIED. The Department of Corrections is ordered to credit all of the time served by Jerald Sturgis since his 1994 arrest toward his current fifteen to thirty year sentence, with his minimum and maximum sentence dates adjusted accordingly.

CONCURRING OPINION BY Judge PELLEGRINI.

While I agree with the majority that Jerald Sturgis (Sturgis) should be given credit in excess of the maximum time served on his 1987 sentence, I write separately because I do not agree with its holding that an executive branch agency can decide not to follow a sentencing order if it believes it is illegal. By so holding, the majority does not seem to realize that orders are orders, not suggestions. Until a court with jurisdiction over the matter decides to revoke or amend the order, the agency is required to carry it out as written, not as it believes it should have been written.

In arriving at this conclusion, the majority relies on *Fajohn v. Department of Corrections,* 547 Pa. 649, 692 A.2d 1067 (1997), to support its view that the Department of Corrections (Department) contends that mandamus cannot be used to compel the Department to honor a valid order that it believes is illegal. However, as explained by subsequent Supreme Court decisions, *Fajohn* does not say what the majority says its says. In *McCray v. Pennsylvania Department of Corrections,* 582 Pa. 440, 450, 872 A.2d 1127, 1133 (2005), our Supreme Court held:

> The Department is an executive branch agency that is charged with faithfully implementing sentences imposed by the courts. As part of the executive branch, the Department lacks the power to adjudicate the legality of a sentence or to add or delete sentencing conditions.

Simply put, our Supreme Court held that the Department must carry out sentences as written.

*Fajohn's* meaning was addressed directly in *Hunt v. Pennsylvania State Police,* 603 Pa. 156, 983 A.2d 627 (2009). In that case, the state police, taking the position adopted by the majority here, contended

that *Fajohn* stands for the proposition that governmental entities may refuse to follow court orders when such orders are illegal, regardless of the mechanism by which the issue is raised, especially when the respondent-agency is not the petitioning party. Addressing that argument, our Supreme Court stated:

> In *Fajohn*, Dominic Fajohn brought an action in mandamus to compel the Department of Corrections to apply credit for a certain period of time in the imposition of his sentence. The Department of Corrections refused to apply credit on the grounds that it violated Pa.R.Crim.P. 1406(c) (concerning imprisonment for other offenses). The Commonwealth Court sustained the Commonwealth's preliminary objections and Fajohn appealed. Our Court found mandamus was not available to compel the relief Fajohn sought, but, rather, held the proper avenue for relief was in an application for resentencing with the trial court.

The State Police's reliance upon *Fajohn* is misplaced. First, unlike in this appeal, the issue of a governmental entity's standing to refuse to comply with a trial court's order was not at issue in *Fajohn*. In fact, standing is not mentioned in the opinion. Second, the *Fajohn* Court was not addressing a matter that arose under CHRIA,[1] but rather, a sentencing matter. Third, and related thereto, our Court unmistakably held in J.H. [*Commonwealth v. J.H.*, 563 Pa. 248, 759 A.2d 1269 (2000)], decided three years after *Fajohn* that "standing is not conferred via a party's relationship to the proceedings." *J.H.*, 563 Pa. at 253, 759 A.2d at 1271. Thus, if the State Police has no standing to challenge an application for expungement before the trial court, 18 Pa.C.S.A. § 9122, and

it has no standing to challenge such an order in the context of a motion to compel before our common pleas courts, J.H., then it follows that it does not have standing to challenge the legality of the expungement order in the context of preliminary objections filed in a petition for review for mandamus. In a mandamus proceeding, the State Police is a respondent only in its role as the central repository, and may not challenge the underlying legality of the expungement order. Indeed, to give the State Police standing to raise preliminary objections in a mandamus action in order to challenge the legality of an expungement order would be to permit it to do collaterally what it could not do directly. As we have made plain, the State Police is not aggrieved "either by the order to expunge [Hunt's] criminal record, or by the order compelling it to expunge the same records." *J.H.*, 563 Pa. at 253, 759 A.2d at 1271–72. Thus, our earlier decision in *Fajohn* does not compel a different result in this appeal.[14]

In footnote 14, the Supreme Court went on to state that:

> Similarly, the State Police's arguments that, based upon its role as the central repository, it is aggrieved because it would be prevented from retaining the record of a sexual offender whose victims were minors and that, potentially, Hunt could commit other crimes and impermissibly seek ARD were rejected by this same conclusion in *J.H.* that the State Police performed ministerial duties and was not aggrieved by an order compelling it to expunge records. *Id.*

603 Pa. at 172, 983 A.2d at 636.

To parrot the Supreme Court's reasoning above, if the Department has no

---

**1.** Criminal History Record Information Act, 18 Pa.C.S. § 9183.

standing to challenge the sentencing order before the trial court, it then follows that it does not have standing to challenge the legality of the sentencing order in the context of preliminary objections filed in a petition for review for mandamus. In a mandamus proceeding, the Department is a respondent only in its role as the "repository" of the prisoner, and may not challenge the underlying legality of the sentencing order. Indeed, to give the Department standing to raise preliminary objections in a mandamus action in order to challenge the legality of a sentencing order would be to permit it to do collaterally what it could not do directly. The Department is not aggrieved by carrying out an order that was unappealed by the entity charged with protecting the public interest, the district attorney. Thus, the Supreme Court decision in *Fajohn* does not allow the Department to use the purported illegality of the order as a defense to a mandamus action.

The danger of the majority's approach is obvious from what occurred here. The Department changed or attempted to change every sentencing order that the courts ordered it to carry out. Sturgis' 1987 sentencing order was for a term of incarceration of not less than five years nor more than five years; in other words, a flat five-year sentence. The Department, or more accurately some clerk in the Department, erroneously believed that the sentence should have been not less than five but more than ten years and required Sturgis to serve five more years than he was sentenced to serve. In 1995, Sturgis was sentenced to a prison term of 15 to 30 years that no one contends was illegal, and the Department proposed to reduce the maximum date from 30 years to 25 years to make up the five years that it illegally required Sturgis to serve. No matter if it believes an order requires the prisoner to serve more time or less time than the law allows, the Department has no authority to change an order to carry out what it believes that order should say or what it believes justice may require.

To allow an executive branch agency to change orders that extend or shorten the term of the sentencing order is beyond its powers. More importantly, to allow agencies not to enforce orders as written because they believe an order did not follow the law violates the litigant's due process and lessens the effect of judicial orders by allowing agencies to play "catch me if you can" with litigants and courts. Because the majority sanctions such conduct, I concur in the result only.